UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILINOIS
EASTERN DIVISION

| | |
|---|---|
| WESTERN WORLD INSURANCE, COMPANY, | ) ) ) |
| Plaintiff, | ) ) ) No. 06 C 3102 |
| v. | ) ) Judge Ruben Castillo |
| JAN MAJERCAK d/b/a J and J CONSTRUCTION, J and J CONSTRUCTION CORPORATION of BURBANK, J. MURPHY LTD. d/b/a CONRAD ROOFING and CONSTRUCTION COMPANY, PILGRIM BAPTIST CHURCH, CHURCH MUTUAL INSURANCE COMPANY, LOOP LAB SCHOOL, INC., | ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

On or about January 6, 2006, Jan Majercak d/b/a J & J Construction ("Majercak") was employed as a subcontractor by Conrad Roofing and Construction Company ("Conrad") to service the roof of the Pilgrim Baptist Church ("Pilgrim"). (R. 31, Majercak Ans. ¶¶ 36-37.) A fire broke out, which gutted the church and collapsed the roof and steeple. (*Id.* ¶ 37.) The fire also destroyed Loop Lab School ("Loop"), which was adjacent to Pilgrim. (*Id.* ¶ 39.) Conrad tendered property damage claims to Western World Insurance Company ("Western World") that were being made against Conrad arising from the fire. (*Id.* ¶ 38.) Subsequently, Western World filed this diversity lawsuit seeking a declaration that the Western World Policy Number NPP883896 ("Policy") issued to Majercak is void and should be rescinded due to material misrepresentations he

made in applying for the Policy. (R. 1, Compl.) Western World joined Conrad, Pilgrim, Church Mutual Insurance Company ("Church Mutual"), and Loop as defendants due to their potential interest in the controversy.[1] (R. 51, Conrad Roofing Resp. to Pl.'s Facts ¶ 9.) Presently before the Court is Western World's motion for summary judgment. (R. 45, Mot. For Summ. J.)[2] For the following reasons, we grant Western World's motion for summary judgment and declare the Policy void and rescinded.

## I. Relevant Facts[3]

### A. Majercak's Applications for Western World Insurance

On or about December 1, 2004, Majercak's duly authorized representative, Pawel Gainski ("Gainski") of the insurance agency Handzel & Associates ("Handzel"), completed an Artisan Contractors Application ("Application") on behalf of Majercak for the purpose of purchasing liability insurance. (R. 46, Pl.'s Facts ¶ 12; R. 31, Majercak Ans. ¶ 12.)[4] The completed Application states the Applicant's Name as "Jan Majercak DBA J. & J. Construction." (Id. ¶ 13.) In the space asking for a "description of all work performed," Gainski wrote "carpentry – residential - 91340." (Id. ¶ 14.) The Application also states that Majercak will perform work on buildings "3 stories" in height. (Id. ¶ 15.) The Application was left blank where it asked for "subcontractor cost" and

---

[1] Church Mutual has never appeared, answered, or otherwise pled to the complaint in the instant case. In addition, this Court entered a default against Loop for failure to timely appear, answer or otherwise plead to the Complaint on August 18, 2006. (R. 33, 8/17/2006 Order.)

[2] Majercak did not file a response to Western World's motion for summary judgment.

[3] The facts are undisputed unless otherwise noted.

[4] A defendant's answers to allegations in a plaintiff's complaint is "not simply evidence . . . , but a judicial admission which removed this point from the realm of contested issues." *Solon v. Gary Cmty. Sch. Corp.*, 180 F.3d 844, 858 (7th Cir. 1999).

"subcontracted work." (*Id.* ¶ 16.) In addition, the Application was left blank where it asked for "Number of Employees." (*Id.* ¶ 17.) The Application is signed "Jan Majerak." (R. 1, Compl., Ex. 1, Application.)

On or about January 12, 2005, Gainski completed a Supplemental Application for Artisan Contractors ("Supplemental Application") on behalf of Majercak. (R. 31, Majercak Ans. ¶ 19.) The Supplemental Application states that the "business name" is "Jan Majercak DBA J. & J. Construction." (*Id.* ¶ 21.) Directly above the signature line, the Supplemental Application states, "The above applicant warrants that the above statements and particulars, together with any attached or appended documents, are true and complete and do not misrepresent, mistake, or omit any material facts." (*Id.* ¶ 22.) The Supplemental Application states "no" next to the following questions: "Do you do roofing?"; "Do you do re-roofing?"; and "Do you use any subcontractors?" (*Id.* ¶¶ 23-25.) The Supplemental Application also states: "ISO Class: Carpentry—91340; # of Employees: 0; Payroll: $33,500." (*Id.* ¶ 26.) The code 91340 is used to reflect residential carpentry work on buildings less than 3 stories. (*Id.*) The Supplemental Application is also signed "Jan Majercak." (R. 1, Compl., Ex. 2, Supp'l Application.)

APS Insurance Agency, Inc. ("APS") quoted, bound, and issued the Policy on Western World's behalf to "Jan Majercak DBA J. & J. Construction" with an effective date of January 12, 2005. (R. 31, Majercak Ans. ¶ 27.) The liability coverage states that it is for: "Carpentry – construction of residential property not exceeding three stories in height." (R. 1, Compl., Ex. 3, Policy.) If Majercak's Application had stated that he did roofing or re-roofing work, APS would not have had authority to quote insurance

3

coverage to Majercak on Western World's behalf. (R. 54, Pilgrim Resp. to Pl.'s Facts ¶¶ 39-40.)

### B. Majercak's Actual Business Practices

At the time the Application and Supplemental Application were executed, approximately 90% or more of all work performed by Majercak was as a subcontractor for Conrad. (R. 31, Majercak Ans. ¶ 29.) During the period immediately preceding and including the Application Period, approximately 75% of Majercak's work as a subcontractor for Conrad consisted of shingling roofs, and most of the rest consisted of gutter work for the drainage of roofs. (*Id.* ¶ 30.) Conrad disputes that 75% of the Majercak's work consisted of shingling roofs, but admits that it was more than 50%. (R. 51, Conrad Roofing Resp. to Pl.'s Facts ¶¶ 31-32.) During this time, approximately 10% of Majercak's work was performed on buildings over three stories tall. (R. 31, Majercak Ans. ¶ 33.) Approximately five to seven people besides Jan Majercak and his brother, Jozef Majercak, were performing work for Majercak at any given time. (*Id.* ¶ 34.) Conrad states that this number fluctuated between two and six. (R. 51, Conrad Roofing Resp. to Pl.'s Facts ¶ 36.) Majercak had an annual payroll substantially greater than $33,500 during the Application period. (R. 31, Majercak Ans. ¶ 35.)

During this time, the remainder of Majercak's work was as a subcontractor for Bell Builders. (*Id.* ¶ 31.) Most of Majercak's work for Bell Builders consisted of shingling roofs and working on the soffits and fascia of roofs. (*Id.* ¶ 32.)

## II. Legal Standard

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must "construe all facts in the light most favorable to the nonmoving party and draw all reasonable and justifiable inferences in favor of that party." *King v. Preferred Tech. Group*, 166 F.3d 887, 890 (7th Cir. 1999). Summary judgment is not appropriate if there are disputed issues of fact remaining, or if the court must make "a choice of inferences" arising from undisputed facts. *Harley-Davidson Motor Co., Inc. v. PowerSports, Inc.*, 319 F.3d 973, 989 (7th Cir. 2003). "Speculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." *Piscione v. Ernst & Young, L.L.P.*, 171 F.3d 527, 544 (7th Cir. 1999) (internal citations and quotations omitted).

### III. Analysis

All parties involved agree that Illinois substantive law applies in this diversity case. *See, e.g., Tanner v. Jupiter Realty Corp.*, 433 F.3d 913, 915 (7th Cir. 2006) ("When a district court sits in diversity, it must apply the choice of law principles of the forum state to determine which state's substantive law governs the proceeding."). In Illinois, rescission of an insurance policy is governed by the Illinois Insurance Code, which states:

> No misrepresentation or false warranty made by the insured or in his behalf in the negotiation for a policy of insurance, or breach of a condition of such policy shall defeat or avoid the policy or prevent its attaching unless such misrepresentation, false warranty

5

or condition shall have been stated in the policy or endorsement or rider attached thereto, or in the written application therefore. No such misrepresentation or false warranty shall defeat or avoid the policy unless it shall have been made with actual intent to deceive <u>or</u> materially affects either the acceptance of the risk or the hazard assumed by the company.

215 ILCS 5/154 (emphasis added.) In the case before us, Western World does not allege that Majercak intended to deceive, but rather claims that alleged misrepresentations made in the written application materials permits rescission of the Policy because these misrepresentations materially affected the risk or hazard assumed by Western World. (R. 47, Pl.'s Mem. In Supp. Of Summ. J. at 7.) Defendants Pilgrim and Conrad disagree, arguing that questions of material fact exist as to whether Majercak made material misrepresentations that can void the Policy.

### A. Misrepresentations

Under Illinois law, "[a] misrepresentation in an application for insurance is a statement of something as a fact which is untrue and affects the risk undertaken by the insurer." *Methodist Med. Cent. of Ill. v. Am. Med. Sec. Inc.*, 38 F.3d 316, 319-20 (7th Cir. 1994) (citing *Ratcliffe v. Int'l Surplus Lines Ins. Co.*, 550 N.E.2d 1052, 1057 (Ill. App. Ct. 1990); *N. Life Ins. Co. v. Ippolito Real Estate P'ship*, 601 N.E.2d 773, 779 (Ill. App. Ct. 1992)). "Incomplete answers or a failure to disclose material information on an application for insurance may constitute a misrepresentation when the omission prevents the insurer from adequately assessing the risk involved." *Id.* at 320 (citing *Garde v. Country Life Ins. Co.*, 498 N.E.2d 302, 308 (Ill. App. Ct. 1986)). Whether a misrepresentation occurred is determined objectively, on the basis of the facts known to the insured at the time of application, regardless of the insured's subjective belief as to the truth of the representations. *Ratcliffe*, 550 N.E.2d at 1057-58.

6

Western World argues that there were at least four misrepresentations on Majercak's Application and Supplemental Application for insurance: (1) that Majercak did not perform any roofing or re-roofing; (2) that Majercak did not use subcontractors and had no employees; (3) that Majercak performed work only on buildings three stories or less in height; and (4) that Majercak's payroll was only $33,500. A comparison of the information presented on the Application and Supplemental Application with Majercak's actual business practices, as recited above, clearly shows that that these four statements in the Application did not accurately represent Majercak's business practices, and thus constituted misrepresentations. It is undisputed that at the time the Application and Supplemental Application were executed, more than 50% of Majercak's work as a subcontractor for Conrad consisted of shingling roofs; approximately 10% of Majercak's work was performed on buildings over three stories tall; two to six people besides Jan Majercak and his brother performed work for Majercak; and Majercak had an annual payroll substantially greater than $33,500. (R. 51, Conrad Roofing Resp. to Pl.'s Facts ¶¶ 31-36; R. 31, Majercak Ans. ¶¶ 33-36.)

Pilgrim and Conrad argue, however, that there are questions of material fact "as to whether Majercak caused any of the alleged misrepresentations that Plaintiff relies upon." (R. 53, Pilgrim Mem. In Opp'n to Summ J. Mot. at 6.) They argue that it was Majercak's agent, and not Majercak, who made the misrepresentations. An insurer may be estopped from asserting any misrepresentations as a defense in an action for payment under an insurance policy where the insurer's agent is primarily responsible for the misrepresentations and the applicant has not acted in bad faith or in collusion with the insurer's agent. *Spinelli v. Monumental Life Ins. Co.*, 476 F. Supp. 2d 898, 911-12 (N.D.

Ill. 2007) (citing *Beck v. Capitol Life Ins. Co.*, 363 N.E.2d 170 (Ill. App. Ct. 1977)); *Marionjoy Rehab. Hosp. v. Lo*, 535 N.E.2d 1061, 1064 (Ill. App. Ct. 1989).

However, in Majercak's answer to Western World's complaint, Majercak admitted that he or a duly authorized representative (his insurance agent) completed the Application. (R. 31, Majercak Ans. at 5.) Jan Majercak also testified in his deposition that he or his brother gave Handzel information for using in renewing Majercak's insurance policy. (R. 51, Conrad Resp. to Pl.'s Facts, Ex. 1, J. Majercak dep. at 21-23.) In addition, Gainski, Handzel's agent, filed a sworn declaration in this case stating that:

> Both the Application and the Supplemental Application were completed using information supplied to Handzel by Majercak. Majercak supplied all information contained in the Application and Supplemental Application regarding Majercak's business activities, work performed, employees, and payroll.

(R. 46, Pl.'s Facts, Ex. 3, Gainski Decl. ¶ 5.) Conrad's and Pilgrim's only evidence to the contrary---that Gainski, rather than Majercak, caused the alleged misrepresentations on the Application---is Jan Majercak's deposition testimony that he does not remember seeing the Application, that his signature was not on the Application and that he was not sure if the signature on the form was his brother's. (R. 51, Conrad Roofing Resp. to Pl.'s Facts, Ex. 1, Majercak Dep. at 21.)

The above testimony is not sufficient to create a genuine issue of material fact as to whether Majercak supplied the information for the applications. "If the evidence creating the alleged factual conflict 'is merely colorable, or is not sufficiently probative, summary judgment may be granted.'" *Unterreiner v. Volkswagen of Am., Inc.*, 8 F.3d 1206, 1211-12 (7th Cir. 1993) (citing *Anderson*, 477 U.S. at 249-50). Majercak's testimony is no more than "colorable." Majercak remembers providing information to Gainski, and he does not know one way or another if his brother signed the Applications

8

for him. Nothing in Majercak's testimony contradicts Gainski's sworn statement that he completed Majercak's Applications for insurance in the same manner that he completed other applications in his 17 years working for Handzel: using information provided by Majercak. (R. 46, Pl.'s Facts, Ex. 2, Gainski Decl.) Defendants have no support for their hypothetical claim that Gainski did not include *all* the information Majercak provided to him.

### B. Materiality

Defendants also argue that there is a genuine issue of material fact as to whether Majercak's misrepresentations were material. A material misrepresentation is one that affects either the acceptance of the risk or the hazard assumed by the insurer. *Methodist Med. Cent.*, 38 F.3d at 320 (internal citations omitted). Under Illinois law, a misrepresentation is material if reasonably careful and intelligent persons would regard the facts as stated to cause the policy to have different terms or not be issued. *TIG Ins. Co. v. Reliable Research Co.*, 334 F.3d 630, 635 (7th Cir. 2003) (internal citations and quotations omitted). A material misrepresentation will void an insurance contract regardless of whether the misrepresentation was made innocently or with an intent to deceive. *Methodist Med. Cent.*, 38 F.3d at 320 (internal citations omitted).

The testimony of an underwriter/employee may be sufficient to establish the materiality of a misrepresentation or omission in an application for insurance. *TIG Ins.*, 334 F.3d at 635. In this case, the President of APS swore in an affidavit that "[i]f either the Application or Supplemental Application had indicated that the applicant was engaged in roofing or re-roofing, APS would not have issued or bound coverage for the applicant on behalf of Western World." (R. 46, Western World Facts, Ex. 5, Corken

Decl. ¶ 7.) In fact, APS would not have even asked Western World to consider issuing coverage for Majercak. (*Id.*) Defendants' conjecture that Western World may have approved roofing or re-roofing coverage for Majercak had APS presented Western World with that option is too speculative to create an issue of material fact. Furthermore, if either the Application or the Supplemental Application had indicated that Majercak used subcontractors, that Majercak's payroll was higher than the reported $33,500, or that Majercak worked on buildings exceeding three stories in height, "any coverage issued and bound for the applicant on behalf of Western World would have been issued for a premium higher than the premium that was actually charged." (*Id.* ¶¶ 8-10.) Under Illinois law, materiality can be established by showing that a misrepresentation would have resulted in different conditions on the insurance policy, including a higher premium. *See, e.g., Royal Maccabees Life Ins. Co. v. Malachinski*, 161 F. Supp 2d 847, 853 (N.D. Ill. 2001); *Bageanis v. Am. Bankers Life Assurance Co.*, 783 F. Supp. 1141, 1145 (N.D. Ill. 1992)

Conrad and Pilgrim raise their final, unconvincing argument that the misrepresentations were not material because Western World should have known that there was an error in the Application at least as to the height of buildings Majercak worked on since the Supplemental Application indicated Majercak did commercial work (which includes buildings over three stories in height). However, "[a]n insurance company need not make any independent investigation and may rely on the truthfulness of answers contained in an insurance application at least if there is nothing to put it on notice that certain answers may be false." *Apolskis v. Concord Life Ins. Co.*, 445 F.2d 31, 36 (7th Cir. 1971); *see also Royal Maccabees Life Ins. Co.*, 161 F. Supp. 2d at 853-54

(citing *Garde v. Inter-Ocean Ins. Co.*, 842 F.2d 175, 178 (7th Cir. 1988)). Therefore, in light of the sworn affidavit of the president of APS and all of the evidence the parties have attached to their summary judgment motions, the Court easily concludes that the misrepresentations on Majercak's Application and Supplemental Application were material. Simply put, Majercak's applications for Western World Insurance were materially false and significantly affected the risk borne by Western World. These false applications did not create a binding insurance contract under Illinois law.

## IV. Conclusion

For the reasons set forth above, the Court grants Western World's motion for summary judgment in its entirety (R. 45), declares the Policy void, and rescinds the Policy pursuant to 215 ILCS/5-154. The Clerk of the Court is directed to enter a final judgment, pursuant to Federal Rule of Civil Procedure 58, in favor of Western World against all defendants.

ENTERED: _____
Judge Ruben Castillo
United States District Court

Dated: June 20, 2007